UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| SANDRA OGLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.: 1:17-CV-40-TAV-CHS |
| | ) |
| U.S. BANK NATIONAL ASSOCIATION, | ) |
| as trustee for RESIDENTIAL ASSET | ) |
| SECURITIES, CORPORATION, HOME | ) |
| EQUITY MORTGAGE ASSET-BACKED | ) |
| PASS-THROUGH CERTIFICATES, | ) |
| SERIES 2007-KS3, and OCWEN LOAN | ) |
| SERVICING, LLC, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

This civil action is before the Court on defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(c) [Doc. 6]. In this motion, defendants seek a judgment on the pleadings in their favor on all claims in plaintiff's complaint [Doc. 1-1]. Plaintiff filed a response in opposition [Doc. 12], and the time for defendants to file a reply has now passed, *see* E.D. Tenn. L.R. 7.1(a). Defendants' motion is thus fully briefed and ready for disposition. For the reasons explained below, the Court will grant this motion.

**I.    Background**

This case concerns allegedly unlawful foreclosure proceedings on plaintiff's home. Plaintiff maintains her primary residence at 6311 Pine Marr Drive in Hixson, Tennessee (the "Property") [Doc. 1-1 ¶ 1]. On October 30, 2006, plaintiff executed a deed of trust on the Property with Homecomings Financial, LLC ("Homecomings") as the lender and

Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary [*Id.* ¶ 33].[1]
Defendant U.S. Bank National Association, as trustee for Residential Asset Securities, Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2007-KS3 (the "Securitized Trust"), is a securitized trust created for the purpose of pooling various residential mortgages [*Id.* ¶ 33]. Plaintiff asserts that, according to Securities and Exchange Commission ("SEC") filings from 2007, the cut-off for placing mortgage loans into the Securitized Trust was April 1, 2007 [*Id.*]. Plaintiff alleges that, despite this, MERS executed an assignment in July 2016, purporting to transfer both the note and deed of trust for the Property to the Securitized Trust [*Id.* ¶ 35].

Defendant Ocwen Loan Servicing, LLC ("Ocwen"), was the mortgage loan servicer for plaintiff's note and deed of trust [*Id.* ¶ 42]. Plaintiff asserts that Ocwen referred her loan for foreclosure and that, on August 25, 2016, a non-judicial foreclosure sale of the Property took place [*Id.* ¶¶ 36, 42]. Plaintiff alleges that she applied for loss mitigation alternatives—such as a loan modification or short sale of the Property—but that Ocwen

---

[1] The Court notes that defendants have attached two documents to its Rule 12(c) motion: the deed of trust [Doc. 6-1] and the foreclosure sale notice [Doc. 6-2]. Ordinarily, in deciding a Rule 12(c) motion—much like a Rule 12(b)(6) motion—the Court must confine its review to the four corners of the pleadings. *See In re Unumprovident Corp. Sec. Litig.*, 396 F. Supp. 2d 858, 875 (E.D. Tenn. 2005). Rule 10(c) provides, however, that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." And the Sixth Circuit has further held that a document attached to a defendant's motion to dismiss is part of the pleadings if it "is referred to in the complaint and is central to the plaintiff's claim." *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) (quoting 11 James Wm. Moore et al., *Moore's Federal Practice* § 56.30[4] (3d ed. 1998)). Here, while plaintiff did not attach the documents at issue to her complaint, the Court finds that the complaint refers, directly or indirectly, to these documents, and that they are central to plaintiff's wrongful foreclosure, FDCPA, and RESPA claims [*See* Doc. 1-1 ¶¶ 33, 36–37, 41–44]. Thus, the Court can, and will, consider defendants' attached documents in deciding the instant motion for judgment on the pleadings.

never properly considered her request before initiating the foreclosure sale [*Id.* ¶ 37]. Plaintiff also claims that, due to a failure to comply with its own enabling documentation, the Securitized Trust lacked standing to pursue foreclosure [*Id.* ¶ 39]. Plaintiff avers that, as a result of defendants' conduct, she has suffered threatened foreclosure and eviction, emotional distress, harm to her credit rating, and legal expenses [*Id.* ¶¶ 51–52].

On January 9, 2017, plaintiff filed a complaint in the Chancery Court for Hamilton County, Tennessee, against both the Securitized Trust and Ocwen [Doc. 1 ¶ 1]. Plaintiff's complaint seeks monetary and injunctive relief against defendants, asserting the following claims: (1) wrongful foreclosure under Tennessee law; (2) a violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692p (the "FDCPA"); and (3) a violation of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601–2617 (the "RESPA") and its implementing regulations—particularly, 12 C.F.R. § 1024.41 [Doc. 1-1 ¶¶ 38–54].[2] Defendants then timely removed plaintiff's action to this Court under 28 U.S.C. § 1446(a) [Doc. 1], and filed an answer to the complaint [Doc. 3]. On April 17, defendants filed the instant motion for judgment on the pleadings under Rule 12(c) [Doc. 6]. Plaintiff filed a response in opposition on March 16 [Doc. 12]. Defendants did not file a reply, and the time to do so has now passed. *See* E.D. Tenn. L.R. 7.1(a). Therefore, the Court will proceed to rule on defendants' motion at this time.

---

[2] Plaintiff's complaint describes Count Three as alleging a violation of the "Consumer Financial Protection Act" [Doc. 1-1 ¶ 53]. However, the only statute or regulation cited with respect to Count Three is § 1024.41, which is a RESPA regulation. Moreover, as discussed more fully in Part III below, the substance of Count Three concerns the loss mitigation provisions of the RESPA regulations. Thus, the Court construes this claim as a RESPA claim.

3

## II. Standard of Review

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is subject to the same standard of review as a motion brought under Federal Rule of Civil Procedure 12(b)(6). *See Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005); *accord Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007). In reviewing either a Rule 12(b)(6) motion to dismiss or a Rule 12(c) motion for judgment on the pleadings, the Court "must construe the complaint in a light most favorable to plaintiffs, accept all well-pled factual allegations as true, and determine whether plaintiffs undoubtedly can prove no set of facts in support of those allegations that would entitle them to relief." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)).

Federal Rule of Civil Procedure 8(a)(2) sets out a liberal pleading standard. *Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004). Thus, pleadings in federal court need only contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Id.* "[A] formulaic recitation of the elements of a cause of action will not do," nor will "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a Rule 12(c) a motion for judgment on the pleadings, the court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires th[is Court] to draw on its judicial experience and common sense." *Id.* at 679.

## III. Analysis

Defendants have moved for judgment on the pleadings under Rule 12(c) on each of plaintiff's three claims—wrongful foreclosure, a violation of the FDCPA, and a violation of the RESPA and its implementing regulations [Doc. 6]. The Court will address each of these causes of action in turn.

### A. Plaintiff's Wrongful Foreclosure Claim

First, defendants seek dismissal of plaintiff's wrongful foreclosure claim [Doc. 11 pp. 3–7]. Plaintiff asserts that she has properly pleaded such a theory of liability [Doc. 12 pp. 2–3]. For the reasons explained below, the Court finds that defendants are entitled to judgment in their favor on plaintiff's wrongful foreclosure claim.

"While there are no specific elements for wrongful foreclosure, Tennessee courts generally examine whether contractual or statutory requirements were met in the foreclosure of the property in question." *Ringold v. Bank of Am. Home Loans*, No. 2:12-

cv-2344, 2013 WL 1450929, at *6 (W.D. Tenn. Apr. 9, 2013) (citing *Hutchens v. Bank of Am. N.A.*, No. 3:11-cv-624, 2012 WL 1618316, at *9–10 (E.D. Tenn. May 9, 2012); *Lee v. Equifirst Corp.*, No. 3:10-cv-809, 2010 WL 4320714, at *10 (M.D. Tenn. Oct. 26, 2010)); *accord Jackson v. WMC Corp.*, No. 2:12-cv-2914, 2013 WL 5550228, at *12 (W.D. Tenn. Oct. 8, 2013). Furthermore, a party seeking to set aside a foreclosure sale that appears to have been properly conducted bears the "substantial" burden of showing "some evidence of irregularity, misconduct, fraud or unfairness on the part of the trustee or mortgagee." *Young v. Bank One, N.A.*, No. M2003-01359-COA-R3-CV, 2004 WL 2098284, at *1 (Tenn. Ct. App. Sept. 20, 2004) (quoting *Holt v. Citizens Cent. Bank*, 688 S.W.2d 414, 416 (Tenn. 1984)). A party asserting wrongful foreclosure may seek one of two mutually exclusive remedies—either damages at law or having the foreclosure sale set aside in equity. 123 Am. Jr. Proof of Facts 3d *Real Property* § 417 (2011).

It is unclear from the face of the complaint what contractual or statutory violation plaintiff is asserting as the basis for her wrongful foreclosure claim. Thus, defendants address various possible options, including a breach of contract theory, failure to satisfy the demands of Tenn. Code Ann. § 35-5-101 *et seq.* concerning foreclosure sales, failure to comply with the Securitized Trust's own pooling and servicing agreement ("PSA"), and a violation of the RESPA. In her response brief, however, plaintiff clarifies the basis for Count One: "The specific statutory scheme which [defendants] violated and which supports a claim for wrongful foreclosure is 12 C.F.R. [§] 1024.41" [Doc. 12 pp. 2–3]. That section serves as an implementing regulation for the RESPA. Plaintiff does not discuss—or even

suggest—other possible companion claims for her wrongful foreclosure claim. Therefore, the Court will accept plaintiff's invitation to construe Count One as asserting a theory of wrongful foreclosure based solely on a RESPA violation.[3]

Section 1024.41 is a regulation promulgated by the Consumer Financial Protection Bureau pursuant to both the RESPA and section 1022(b) of the Dodd-Frank Wall Street Reform and Consumer Protection Act. *Campbell v. Nationstar Mortg.*, 611 F. App'x 288, 296 (6th Cir. 2015). It became effective on January 10, 2014. *Ray v. U.S. Bank Nat'l Ass'n*, 627 F. App'x 452, 456 (6th Cir. 2015). The regulation "requires mortgage servicers to make decisions on loan modification requests in a timely manner and prohibits servicers from foreclosing if a mortgagor submits a complete modification application more than 37 days before a scheduled sale." *Brimm v. Wells Fargo Bank, N.A.*, 688 F. App'x 329, 330 (6th Cir. 2017); *see also Miller v. Caliber Home Loans, Inc.*, No. 3:16-cv-621, 2018 WL 935439, at *2 (W.D. Ky. Feb. 16, 2018) (noting that § 1024.41 bars foreclosure "if the borrower has submitted a complete loss-mitigation application"). This section imposes several duties on loan servicers who receive timely and complete loss mitigation

---

[3] Even setting aside the clarification provided in plaintiff's response brief, the Court finds that construing plaintiff's wrongful foreclosure claim as premised solely on an alleged violation of § 1024.41 is the most appropriate course. While the pertinent section of the complaint mentions violations of federal and state statutory and constitutional law, it seems to do so only in the context of a violation of § 1024.41 [*See* Doc. 1-1 ¶ 44 ("By failing to comply with the terms of the securitized trust and the requirements of the CFPA, [defendants] violated the requirements of [§ 35-5-101 *et seq.*] and Article § 8 of the Tennessee Constitution and the Equal Protection Clause of the United States Constitution.")]. The Court notes that, even if plaintiff did intend to rest her wrongful foreclosure claim on these offhand references to other sources of law, she has failed to plead such theories with sufficient factual specificity to survive a motion for judgment on the pleadings. And, to the extent plaintiff may also rely on a violation of the Securitized Trust's PSA, that Court briefly addresses that possible companion claim below.

applications,[4] including, within 30 days of receipt, "[e]valuat[ing] the borrower for all loss mitigation options available" and delivering to her "a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer." § 1024.41(c)(1). The regulation further provides that borrowers "may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. § 2605(f))." § 1024.41(a).

However, the regulation makes clear that "[n]othing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option." *Id.* Nor should § 1024.41 "be construed to create a right for a borrower to enforce the terms of any agreement between a servicer and the owner or assignee of a mortgage loan, including with respect to the evaluation for, or offer of, any loss mitigation option." *Id.* Thus, "multiple federal courts have recognized that [§ 1024.41] does not require servicers to offer loss mitigation alternatives to borrowers." *Beasley v. Wells Fargo Bank, N.A.*, No. 3:16-cv-1373, 2017 WL 413856, at *5 (M.D. Tenn. Jan. 31, 2017). Instead, that regulation merely "imposes a duty on a servicer to comply with certain procedures in evaluating a loss mitigation application, a duty that is triggered only after the borrower submits such an application." *Id.*; *accord Mader v. Wells Fargo Bank, N.A.*, No: 16-cv-309, 2017 WL 177619, at *5 (D.N.H. Jan. 17, 2017); *Dent v. Inv. Corp. of Am.*, No. 15-cv-11268, 2015 WL 9694807, at *4 (E.D. Mich. Dec. 23, 2015). But once a loan servicer has received a complete loss mitigation application, it incurs a duty to notify the borrower in writing of

---

[4] Section 1024.41(b)(1) defines a "complete loss mitigation application" as "an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available."

its decision whether or not to offer her any loss mitigation options. *Bennett v. Bank of Am., N.A.*, 126 F. Supp. 3d 871, 883–84 (E.D. Ky. 2015).

Here, plaintiff's complaint contains only the following allegations bearing on this issue: (1) that plaintiff applied for loss mitigation alternatives with defendant Ocwen, but "such request was never properly considered" [Doc. 1-1 ¶ 37]; (2) that Ocwen "never offered [p]laintiff any loss mitigation alternatives" [*id.* ¶ 53(a)]; and (3) that defendants thus violated § 1024.41 [*id.* ¶ 44]. Defendants argue that these conclusory allegations fail to establish a RESPA claim with sufficient specificity. The Court agrees. The first allegation does assert that plaintiff submitted a loss mitigation application to Ocwen, and the Court accepts this as true for purposes of defendants' Rule 12(c) motion. *See Bishop*, 520 F.3d at 519. But plaintiff fails to plead any facts indicating that this application was "complete" within the meaning of § 1024.41(b)(1)—meaning it contained all information necessary for Ocwen's evaluation and review[5]—and was received by Ocwen more than 37 days before the foreclosure sale, as § 1024.41(c)(1) requires. Absent that, Ocwen had no duty to offer any loan mitigation options to plaintiff at all, *see Beasley*, 2017 WL 413856, at *5, so plaintiff's second allegation is likewise deficient. Finally, the third allegation—that defendants[6] violated § 1024.41—is precisely the sort of conclusory statement of law

---

[5] The Court notes that, if Ocwen had received an incomplete application, it would still have a duty to "exercise reasonable diligence in obtaining documents and information to complete [the application]." § 1024.41(b)(1). Plaintiff likewise fails to plead any violation of this duty.

[6] Although plaintiff raises this final allegation against the Securitized Trust as well, she never explains why § 1024.41 applies to that defendant or how it allegedly violated this regulation. This is an alternative basis for dismissing Count One as against the Securitized Trust.

that cannot satisfy the Rule 8(a)(2) pleading standard. *See Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005) (noting that "legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss"). As such, the Court finds that plaintiff has failed to plead a plausible RESPA claim as the foundation for Count One.

Although plaintiff's brief disclaims any other basis for her wrongful foreclosure claim, given certain language in the complaint, the Court also briefly considers whether failure to comply with the Securitized Trust's PSA may support this cause of action [*See* Doc. 1-1 ¶ 44]. As defendants note, "[c]ourts have consistently rejected borrowers' requests to have mortgage assignments and foreclosures invalidated due to non-compliance with Pooling and Servicing Agreement provisions, based on borrowers' lack of standing." *Dauenhauer v. Bank of N.Y. Mellon*, 562 F. App'x 473, 480 (6th Cir. 2014). This is based on the general principle of contract law that a party may not challenge the assignment of a contract to which it is neither a party nor a third-party beneficiary. *Id.* (citing *Owner–Operator Indep. Drivers Ass'n v. Concord EFS, Inc.*, 59 S.W.3d 63, 68 (Tenn. 2001)). As in *Dauenhauer*, plaintiff here has not alleged that she was either a party to or a third-party beneficiary of the Securitized Trust's PSA. Thus, a violation of the PSA would not provide an adequate basis for plaintiff's wrongful foreclosure claim.

In sum, the Court finds that plaintiff has failed to plead "a claim to relief that is plausible on its face" with respect to a wrongful foreclosure theory. *Twombly*, 550 U.S. at 570. Defendants are thus entitled to judgment on the pleadings on Count One.

### B. Plaintiff's Fair Debt Collection Practices Act Claim

Second, defendants seek dismissal of plaintiff's FDCPA claim [Doc. 11 pp. 8–10]. Plaintiff asserts that she has properly pleaded such a theory of liability [Doc. 12 pp. 3–5]. For the reasons explained below, the Court finds that defendants are entitled to judgment in their favor on plaintiff's FDCPA claim.

Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e). As such, the FDCPA prohibits "debt collectors" from using any "false, deceptive, or misleading representation[s]," or any "unfair or unconscionable means," to collect or attempt to collect a debt. *Id.* §§ 1692e, 1692f. The statute defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* § 1692a(6). However, this definition excludes "creditor[s]"—i.e., "any person who offers or extends credit creating a debt or to whom a debt is owed," so long as the person did not "receive[] an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." *Id.* § 1692a(4).

The FDCPA's prohibitions generally apply to debt collectors, but not creditors. *Beasley*, 2017 WL 413856, at *5. The Sixth Circuit has held that, "as to a specific debt,

one cannot be both a 'creditor' and a 'debt collector,' as defined in the FDCPA, because those terms are mutually exclusive." *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 359 (6th Cir. 2012) (quoting *FTC v. Check Inv'rs, Inc.*, 502 F.3d 159, 173 (3d Cir. 2007), *abrogated on other grounds by Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017)); *see also MacDermid v. Discover Fin. Servs.*, 488 F.3d 721, 735 (6th Cir. 2007) (noting it is "'well-settled' that 'a creditor is not a debt collector for the purposes of the FDCPA and creditors are not subject to the FDCPA'" (quoting *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 794 (W.D. Ky. 2003))); *Dey El ex rel. Ellis v. First Tenn. Bank*, No. 13-2449, 2013 WL 6092849, at *10 (W.D. Tenn. Nov. 18, 2013) ("[T]he term 'debt collector' does not include 'the consumer's creditors . . . or an assignee of a debt, as long as the debt was not in default at the time it was assigned.'" (quoting *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106 (6th Cir. 1996))).

Here, defendants argue that the complaint fails to sufficiently allege that either of them are "debt collectors" within the meaning of the FDCPA. As for the Securitized Trust, defendants argue that plaintiff has not alleged it (or U.S. Bank, as trustee) either conducts business in interstate commerce with the principal purpose of collecting debts, or regularly attempts to collect debts owed to another. As for Ocwen, defendants note that the Sixth Circuit has held that, "except for purposes of § 1692f(6), an enforcer of a security interest, such as a repossession agency, does not meet the statutory definition of a debt collector

under the FDCPA."[7] *Montgomery v. Huntington Bank*, 346 F.3d 693, 700–01 (6th Cir. 2003). This is because the statutory definition excludes any entity that attempts to collect a debt owed to another when "incidental to a bona fide fiduciary obligation"—such as the enforcement efforts of a loan servicer on a lender's behalf. § 1692a(6)(F)(i); *see also Shugart v. Ocwen Loan Servicing, LLC*, 747 F. Supp. 2d 938, 942–43 (S.D. Ohio 2010) (noting that the § 1962a(6)(F)(i) exception may remove a loan servicer from the definition of a debt collector). This exception may apply even if the debt was already in default when the entity began to service the loan. *Shugart*, 747 F. Supp. 2d at 943. In response, plaintiff asserts that attempting foreclosure is a debt collection activity and that, according to the SEC filings, her loan must have been in default when defendants acquired it.

After fully considering the matter, the Court concludes that plaintiff has adequately alleged that each defendant is a "debt collector" under the FDCPA, at least for purposes of the pleading stage of this case. The sole sentence in the complaint bearing on this point is this: "Defendant is a debt collector as the term is defined in [§ 1692a(6)]" [Doc. 1-1 ¶ 48]. The most obvious initial point is that, because of the use of the singular "[d]efendant," it is unclear whether this allegation is directed at only one defendant (and if so, which), or both. But construing the complaint in the light most favorable to plaintiff, the Court assumes she

---

[7] Section 1692f(6) prohibits "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property" under certain circumstances. The definition of "debt collector" under § 1692a(6) is expressly broadened to include security-interest enforcers for purposes of § 1692f(6). Here, plaintiff's complaint never references § 1692f(6) or includes any factual allegations suggesting the applicability of that subsection. Thus, even if the broadened definition of "debt collector" could theoretically apply in this case with respect to Ocwen, the Court finds that plaintiff has failed to satisfy the Rule 8(a) pleading standard on this point.

13

intended to allege that both defendants qualify as debt collectors. The Sixth Circuit has made clear that the status of both debt assignees and loan servicers as debt collectors depends on whether the debt was in default when it was acquired. *Bridge*, 681 F.3d at 359 ("For an entity that did not originate the debt in question but acquired it and attempts to collect on it, that entity is either a creditor or a debt collector depending on the default status of the debt at the time it was acquired. The same is true of a loan servicer . . . ." (footnote omitted)). Here, while the complaint itself does not indicate when plaintiff's debt went into default, a letter attached by defendants to its motion suggests that this occurred some time before June 29, 2016 [Doc. 6-2 p. 16]. And plaintiff alleges that defendants acquired this debt in July 2016 [Doc. 1-1 ¶ 35]. Because the FDCPA "treats assignees [and loan servicers] as debt collectors if the debt sought to be collected was in default when acquired by the assignee," and because the Court must construe the facts in the light most favorable to plaintiff, the Court finds that she has adequately alleged that defendants acquired a defaulted loan in an attempt to collect on it. *Bridge*, 681 F.3d at 359 n.3 (quoting *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003)).

Furthermore, while the exception for those who collect a debt owed to another "incidental to a bona fide fiduciary obligation" might well apply to Ocwen, § 1692a(6)(F), the pleadings do not contain sufficient information, viewed in the light most favorable to plaintiff, to answer that question at this stage of the case. *See Shugart*, 747 F. Supp. 2d at 943 (rejecting this same argument by Ocwen in deciding a Rule 12(b)(6) motion in a different case and noting that "this argument is more appropriate for a motion for summary

14

judgment"). In other words, the precise business relationship between the two defendants is unclear from the pleadings as they currently stand. Accordingly, while the allegations of the complaint are certainly sparse on this issue, the Court concludes that plaintiff has managed to satisfy the "liberal notice pleading requirements" of Rule 8(a) with respect to the debt-collector determination. *Smith*, 378 F.3d at 576.

However, even if one or both defendants qualify as debt collectors, the Court finds that plaintiff has failed to plead violations of § 1692e and § 1692f with sufficient specificity to state a plausible FDCPA claim. To state a claim under the former, a plaintiff must allege that the defendant made a "false, deceptive, or misleading representation," in attempting to collect a debt. § 1692e. "[I]n assessing whether particular activity constitutes false, deceptive, or misleading conduct under [this section], we look to the 'least sophisticated consumer' standard." *Galati v. Manley Deas Kochalski, LLC*, 622 F. App'x 473, 476 (6th Cir. 2015) (quoting *Lewis v. ABC Bus. Servs., Inc.*, 135 F.3d 389, 400 (6th Cir. 1998)). The question is whether a hypothetical least sophisticated consumer would have been misled by the defendant's actions. *Wallace v. Wash. Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012). And, while the "catchall provision" of § 1692f prohibits a wider array of unfair or unconscionable practices than § 1692e, "if a [§] 1692f claim is premised on a false or misleading representation, the misrepresentation must be material." *Clark v. Lender Processing Servs.*, 562 F. App'x 460, 467 (6th Cir. 2014). The least sophisticated consumer standard applies also to this materiality determination. *Id.*

Only two sentences in the complaint address defendants' conduct with respect to Count Two. First, plaintiff states that "[d]efendant used false, deceptive and/or misleading statements in attempting to foreclose on [p]laintiff in violation of [§ 1692e]" [Doc. 1-1 ¶ 49]. Second, plaintiff states that "[d]efendant's conduct constitutes an unfair and/or unconscionable act in the collection of a debt in violation of [§ 1692f]" [*Id.* ¶ 50]. Once more, it is unclear whether these allegations are directed at only one defendant or both. But still assuming that Count Two applies to both defendants, these two sentences offer nothing more than a "threadbare recital[]" of the statutory language, failing to provide any factual allegations—conclusory or otherwise—in support of the claim. *Iqbal*, 556 U.S. at 678. As in *Galati*, plaintiff "do[es] not suggest that the least-sophisticated consumer would have been confused, let alone that [she was] confused or misled," by defendants' conduct. 622 F. App'x at 476. But unlike in *Galati*, the complaint here fails to even specify what actions or omissions form the basis for the alleged violations of § 1692e and § 1692f. Accordingly, the Court—and, most importantly, defendants—are left to speculate as to the factual basis for plaintiff's FDCPA claim.

In her response brief, plaintiff suggests that the "confusion caused by [d]efendants' collective actions"—including their uncertain roles in relation to her debt and the lack of communication regarding loss mitigation alternatives—is the conduct that violated § 1692e and § 1692f [Doc. 12 p. 5]. Even if these conclusory allegations were sufficient, however, the Court's review is confined to the four corners of the pleadings and attached documentation. *See infra* p. 2 n.1. Plaintiff cannot meet the Rule 8(a) pleading standard

by supplementing her complaint with further factual allegations in an unsworn merits brief filed in response to a Rule 12(c) motion. *See Ludwig v. Ky. Dep't of Military Affairs*, No. 13-174-GFVT, 2015 WL 351863, at *3 (E.D. Ky. Jan. 23, 2015) ("The facts in the Complaint—and not the extraneous ones in [the plaintiff's] Response brief—are the focus of a 12(b)(6) inquiry."); *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 842 (S.D. Ohio 2012) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (alteration in original) (quoting *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988))). Thus, plaintiff's complaint fails to provide defendants with "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

In sum, while plaintiff has adequately alleged that both defendants qualify as "debt collectors" under the FDCPA, she has failed to state a plausible claim to relief under either § 1692e or § 1692f of that act. Therefore, defendants are entitled to judgment on the pleadings with respect to Count Two.

### C. Plaintiff's Consumer Financial Protection Act Claim

Third and finally, defendants seek dismissal of plaintiff's claim under the RESPA and its implementing regulations [Doc. 11 pp. 10–12]. Plaintiff asserts that she has properly pleaded such a theory of liability [Doc. 12 pp. 5–6]. The Court has already explained that plaintiff has failed to plead a violation of § 1024.41 as a companion claim to Count One. *See supra* Section III.A. That same reasoning applies to Count Three as well, and plaintiff has not identified any other provision of the RESPA or its implementing

regulations that would provide a basis for recovery. As such, the Court finds that defendants are entitled to judgment in their favor on Count Three.

## IV. Conclusion

Accordingly, in a separate order filed contemporaneously with this opinion, the Court will **GRANT** defendants' motion for judgment on the pleadings [Doc. 6]. Plaintiff's complaint [Doc. 1-1] will therefore be **DISMISSED WITHOUT PREJUDICE**, and the Clerk of Court will be **DIRECTED** to **CLOSE** this case.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan  
CHIEF UNITED STATES DISTRICT JUDGE